FILED

2017 AUG 18  AM 9: 43

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RICHARD J. STEINLE, | ) | CASE NO.: 5:17 CV 1734 |
| 219 Woodsdale Drive | ) | JUDGE ADAMS |
| Mogadore, OH 44260 | ) |  |
|  | ) |  |
| Plaintiff, | ) | JUDGE MAG. JUDGE BURKE |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| JUDGE LAURIE J. PITTMAN (in her | ) | COMPLAINT WITH JURY DEMAND |
| official and individual capacities) | ) |  |
| Portage County Court of Common Pleas | ) |  |
| 203 W. Main St., Ravenna, OH 44266 | ) |  |

## NATURE OF THE ACTION

1.     This is a civil-rights action brought for violations of Plaintiff, Richard Steinle's, free-

speech rights  and due process rights. Defendant, Judge Laurie J. Pittman, of the Portage County

Court of Common Pleas, wrongfully terminated Mr. Steinle from his position as mediator with

the Court. She did so because of a letter to the editor that he wrote as a private citizen on a matter

of public concern unrelated to his employment duties. She provided Mr. Steinle no pre-

termination notice of opportunity to be heard. As a result, Judge Pittman violated the First and

Fourteenth Amendments to the United States Constitution and is personally liable to Mr. Steinle

for damages he suffered as a result of her unconstitutional acts.

## PARTIES

2.     Plaintiff, Richard J. Steinle, worked as the mediator in the Portage County Court of Common Pleas from August 31, 1999 until January 27, 2017. He resides in Portage County, Ohio.

3.     Defendant, Laurie J. Pittman, is a Judge of the Portage County Court of Common Pleas. She works in Portage County, Ohio. She is sued in her official capacity only as to declaratory and injunctive relief sought. She is sued in her personal capacity as to monetary damages.

## JURISDICTION AND VENUE

4.     Jurisdiction over federal claims under 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 206, *et seq.*, which provide for attorney and expert fees, is asserted under 28 U.S.C. § 1331.

5.     The Court has personal jurisdiction over Defendants and venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims took place within the jurisdiction of the U.S. District Court for the Northern District of Ohio.

## FACTUAL BACKGROUND

**The common pleas court, through a competitive process, hired Mr. Steinle in 1999 to develop a mediation program and serve as its mediator.**

6.     In 1999, the Portage County Court of Common Please received an Ohio Supreme Court grant to institute a mediation program. Mr. Steinle applied for the position.

7.     Before applying, Mr. Steinle developed the successful mediation program in the Summit County Court of Common Pleas.

8.     The seven-member Mediation Advisory Committee, consisting of two practicing attorneys, four community members, and one court representative, interviewed Mr. Steinle in a competitive process and recommended him for the position.

9.      Upon the committee's recommendation, Judge Joseph R. Kainrad and Judge John A. Enlow interviewed Mr. Steinle in a competitive process on August 27, 1999 and extended him an offer to begin on August 31, 1999.

10.     Mr. Steinle accepted the offer and served as mediator for the next 17+ years, conducting nearly 4,000 mediations and achieving results unmatched by any other court-mediation program in Ohio. *See, Portage County breaks settlement rate records through mediation*, Daily Legal News (1/8/16) (available at: http://dlnnews.com/editorial/14342).

11.     In 2004, Judge Kainrad retired and Judge Pittman won his seat for the term beginning January of 2005. She remains in that seat today.

12.     As a mediator conducting confidential mediations under Ohio Law, Mr. Steinle did not discuss the cases he was mediating with judges of the Common Pleas Court, including Judge Pittman. The judges did not rely on Mr. Steinle's guidance and advice in carrying out their own duties.

### Judge Pittman demands that Mr. Steinle submit his registration of be fired.

13.     On January 25, 2017, Judge Pittman instructed Tammy S. Kossler, the administrative assistant in the mediation department, that Judge Pittman wanted to meet with Mr. Steinle in her chambers on January 27, 2017, at 11:45 a.m. Judge Pittman told Ms. Kossler that the meeting would only take a few minutes.

14.     At no time before January 27, 2017, did any court personnel give Mr. Steinle any reason to believe his performance was anything other than exemplary. He never received a negative performance evaluation or any type of disciplinary action.

15.     At 11:10 a.m. on January 27, 2017, Mr. Steinle was in his office speaking with Attorney James E.J. Ickes. Attorney Eric R. Fink entered Mr. Steinle's office and told him that Judge Pittman had summoned Mr. Fink to her chambers.

16.     Mr. Fink is a practicing attorney with offices in Kent, Ohio. He is also the Assistant Law Director of the City of Kent. He is not an employee of the Portage County Court of Common Pleas.

17.     Judge Pittman and Mr. Fink had previously met on January 13, 2017, and January 20, 2017, to discuss Plaintiff's impending termination.

18.     Mr. Fink told Mr. Steinle and Mr. Ickes that Judge Pittman ordered Mr. Fink to inform Mr. Steinle that "the paperwork has been prepare to have you [Mr. Steinle] fired effective today at 4:00 p.m."

19.     Mr. Fink told Mr. Steinle and Mr. Ickes that Judge Pittman ordered Mr. Fink to inform Mr. Steinle that her decision was "final" and she would not entertain any questions about the decision.

20.     Mr. Fink told Mr. Steinle and Mr. Ickes that Judge Pittman ordered Mr. Fink to inform Mr. Steinle that if he wishes to avoid being discharged at 4:00 p.m., he had to prepare a letter of resignation agreeing to "train a replacement" and present it to her at the 11:45 a.m. meeting.

21.     Judge Pittman's message, delivered through Mr. Fink, was crystal clear: Mr. Steinle has no choice but to resign to avoid the humiliation of being fired.

22.     Based on Judge Pittman's ultimatum to resign or be fire, Mr. Steinle prepared the resignation letter she demanded and reported to Judge Pittman's chambers at 11:45 a.m.

23.     When he arrived in her chambers, Judge Pittman asked Mr. Steinle. "You know why you're here, don't you?"

24.     In response, Mr. Steinle recounted the events of the last 35 minutes regarding Mr. Fink's delivering the ultimatum from Judge Pittman that Mr. Steinle resign or be fired. He handed her the resignation letter she has demanded through Mr. Fink.

25.     Judge Pittman told Mr. Steinle that he would be allowed to stay to train his replacement until March 10, 2017, and insisted that date was not negotiable.

26.     Shortly after he left Judge Pittman's chambers, Mr. Steinle received a letter from Judge Pittman that read in part: "[A]gain I want to thank you for your service and I truly wish this could have been resolved in another manner."

27.     Judge Pittman's letter, addressed to "Mr. Richard Stienle" (sic), inexplicably invokes R.C. 124.11, which contains no language pertaining to an employee's resignation.

28.     Mr. Steinle's forced "resignation" was actually a constructive discharge.

### Judge Pittman refuses Mr. Steinle's request to use his accrued vacation and sick time and tells him that his letter to the editor was a reason for his dismissal.

29.     Mr. Steinle subsequently asked to meet with Judge Pittman to discuss using his accrued vacation days and sick days to remain on the payroll until March 24, 2017. This would have extended his health coverage closer to the first date (4/1/17) he could receive coverage through Medicare.

30.     When they met on February 15, 2017, Judge Pittman told Mr. Steinle that she was firing him because of a letter to the editor he authored that was published in the Cleveland Plain Dealer. (Plaintiff's Exhibit A).

31.     The subject letter criticized Ohio Attorney General, Mike DeWine over his handling of a matter in Cuyahoga County regarding the $859 million fraud in the Bureau of Workers Compensation.

32.     Mr. Steinle learned of the BWC case through articles in the Plain Dealer and decisions rendered by the Cuyahoga County Court of Common Pleas and the Eighth District Court of Appeals.

33.     No aspect of the BWC fraud that Mr. Steinle referred to in his letter was pending at any time before any judge of the Portage County Court of Common Pleas.

34.     In response to Judge Pittman's reference to the letter to the editor as a basis for his termination, Mr. Steinle asked Judge Pittman why this speech was problematic.

35.     Judge Pittman responded that Mr. Steinle should have obtained her preapproval before sending the letter. Yet the letter merely expressed Mr. Steinle's personal opinion on a matter of public concern—an opinion that had nothing to do with his job.

36.     Judge Pittman summarily denied Mr. Steinle's request to use his accrued days claiming that payroll has already been notified of his final date. Mr. Steinle asked alternatively to be placed on unpaid administrative leave, but still retain benefits. Judge Pittman refused.

37.     Mr. Steinle's last date was March 10, 2017.

## CLAIM 1
### First and Fourteenth Amendment violation under 42 U.S.C. § 1983 against Defendant Pittman in her official and personal capacities.

38.     Plaintiff incorporates all previous allegations.

39.     Mr. Steinle engaged in protected conduct in writing a letter to the editor about the Cuyahoga County matter involving the BWC.

40.     Mr. Steinle's protected speech addressed a matter of public concern on a matter that was not pending in the Portage County Court of Common Pleas or before him as a mediator.

41.     Mr. Steinle's protected speech was in his capacity as a private citizen.

42.     Mr. Steinle's protected speech did not involve his employment or have any relation to the Portage County Court of Common Pleas' ability to deliver efficient public service or perform its legitimate functions. His speech did not undermine any legitimate goal or mission of his employer, create disharmony among co-workers, or impair discipline by superiors. The matter he spoke out on was litigated in another county and fell outside his professional duties as a mediator.

43.     Judge Pittman took adverse action against Mr. Steinle for engaging in the protected activity by demanding that he resign or endure the public humiliation of an immediate termination.

44.     Being told to resign or be terminated for engaging in this protected activity would deter a person of ordinary firmness from continuing to engage in the protected conduct.

45.     It was clearly established at the time of Mr. Steinle's termination that a public employee could not be discharged in retaliation for speech as a private citizen on a matter of public concern. See, *Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).*

46.     Judge Pittman had no legitimate grounds to terminate Mr. Steinle or ask for his resignation for writing the letter.

47.     By Judge Pittman's own admissions to Plaintiff as well as Mr. Fink, Plaintiff's letter to the editor was a substantial and motivating factor for his discharge. See, *Jones v. Fitzgerald, 285 F. 3d 705, 715 (8th Cir. 2002) and Eberhardt v. O'Malley, 17 F. 3d.1023, Syll. 5 (7th Cir. 1994).*

48.     As a direct and proximate result of Judge Pittman's unlawful conduct, Mr. Steinle has suffered and will continue to suffer economic and noneconomic damages for which Judge

Pittman is liable, including, but not limited to, pain and suffering, loss of salary, and other terms, privileges, and conditions of employment.

49.     Judge Pittman's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter her and others from engaging in this type of unlawful conduct.

## CLAIM 2
### Fourteenth Amendment due-process violation under 42 U.S.C. § 1983 against Defendant Pittman in her official and personal capacities.

50.     Plaintiff incorporates all previous allegations.

51.     Mr. Steinle had a protectable property interest in his position.

52.     Mr. Steinle was not afforded any procedures to which government employees with a property interest in their jobs are ordinarily entitled.

53.     Mr. Steinle received no notice or hearing before his discharge.

54.     When they met on January 27, 2017, Judge Pittman made it clear that she had already made up her mind regarding Mr. Steinle's termination and nothing he was going to say would change that.

55.     As mediator, Mr. Steinle was not one of the four "clerical and administrative support employees" permitted to Judge Pittman as an elective officer under Ohio Rev. Code § 124.11(A)(8).

56.     The position of mediator for a common pleas court is not specifically included in the unclassified service under Ohio Rev. Code § 124.11(A).

57.     R.C.124.12(B) "Notice of appointment to unclassified position" requires that the appointing authority "shall provide the employee with written information describing the nature of employment in the unclassified civil service" on the date of appointment.

58.     Plaintiff was never provided with that "written information" upon appointment on August 31, 1999 or anytime thereafter.

59.     R.C.124.12(B) also requires that the appointing authority "shall provide the employee with written information describing the duties of that position" within thirty (30) days after appointment.

60.     Plaintiff was never provided with that "written information" within thirty (30) days after his appointment or anytime thereafter.

61.     Mr. Steinle was a classified civil servant under Ohio Rev. Code § 124.11 who could be terminated only for cause subject to a pre-termination hearing and post-termination administrative review of any dismissal.

62.     As a classified civil servant, Plaintiff held no management or supervisory authority over Ms. Kossler as evidenced by Defendant's written statement "Tammy is the courts' (sic) Employee (sic), not your employee.

63.     Mr. Steinle engaged in no misfeasance, malfeasance, or nonfeasance in office.

64.     Mr. Steinle was deprived of his property interest in continued employment without notice or any opportunity to be heard or present his side of the story to his employer.

65.     Mr. Steinle was denied the opportunity to invoke the discretion of the decision maker before termination took place.

66.     Mr. Steinle's termination was not the subject of a meaningful hearing at which he was able to invoke Judge Pittman's discretion.

67.     It was clearly established at the time of Mr. Steinle's termination that classified civil servants had a property interest in continued employment and were entitled to pre-termination notice and opportunity to be heard.

68.     As a direct and proximate result of this unlawful conduct, Mr. Steinle has suffered and

will continue to suffer economic and noneconomic damages for which Defendant is liable,

including, but not limited to, pain and suffering, loss of salary, wages, benefits, and other terms,

privileges, and conditions of employment.

69.     The Defendant's acts were willful, egregious, malicious, and worthy of substantial

sanction to punish and deter Defendant and others from engaging in this type of unlawful

conduct.

### PRAYER FO RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the

Court.

A.     Enter judgment in Plaintiff's favor as to all claims for relief;

B.     Declare that Defendant's acts and conduct constitute violations of federal law;

C.     Order Plaintiff restored to his previous position;

D.     Enjoin Defendant from further retaliating against Plaintiff and from further
implementing any previous acts of retaliation;

E.     Award Plaintiff full compensatory damages, economic and noneconomic,
including, but not limited to, damages for pain and suffering, mental anguish,
emotional distress, humiliation, and inconvenience that Plaintiff has suffered and
is reasonably certain to suffer in the future;

F.     Award Plaintiff punitive damages for Defendants' egregious, willful, and
malicious conduct;

G.     Award pre-judgment and post-judgment interest at the highest lawful rate;

H.     Award Plaintiff reasonable attorneys' fees (including expert fees) and all other
costs of this suit;

I.     Aware all other relief in law or equity to which Plaintiff is entitled and that the
Court deems equitable, just or proper.

Plaintiff demands a trial by jury on all issues within this Complaint.


Respectfully submitted,

Richard J. Steinle - Plaintiff
219 Woodsdale Drive
Mogadore, Ohio 44260
(234) 521-4326 - Phone
rsteinle01@gmail.com - Email